## PERRY v. GREEN.

In Case.

1. The indorsee of a promissory note, payable *on demand*, must use due dili-
gence: that is, he must demand payment of the maker, in a reasonable
time, and in case of non payment, give notice as in other cases to the in-
dorser.
2. Whether parol evidence of a consent or agreement between the parties to
such a note, that payment should not be demanded in a *reasonable time*,
but that it should be treated as a note payable in one or more years,
would be admissible: Quere?
3. A note payable on demand, *with interest*, indorsed by the defendant, for the
accommodation of the maker, and by the maker, with the consent of the
indorser, given to the plaintiff as security for money borrowed, must
nevertheless be treated as other negotiable paper.
4. *Aliter,* where the indorser takes an assignment of all the estate of the maker,
or has received effects into his hands, to satisfy the debt; in such case,
no demand or notice is necessary.

Argued and decided orally, at May Term, 1842.

*W. L. Dayton* and *I. H. Williamson* for plaintiff.

*R. S. Field* for defendant.

The opinion of the Court, was delivered by

HORNBLOWER, C. J.    This cause comes before us upon a case
certified by the Circuit Court of Middlesex. The action is
against the defendant, as indorser of a promissory note, for two
thousand dollars, dated New York, June 2d, 1835; payable on
demand, with interest.

This note, on or about the day it bears date, was delivered by
Dimond the maker of it, to O. H. Perry the agent of the plain-
tiff, as security for the sum of two thousand dollars, which Di-
mond then borrowed of her. O. H. Perry testifies, that Dimond
applied to him for a loan of two thousand dollars, and offered to
secure the re-payment of it by his note indorsed by the defend-
ant; that deeming the security sufficient, he as agent for the
plaintiff, his sister, lent Dimond the money out of her funds, and
received this note, indorsed by the defendant, as security for it.
Perry says, it was understood between him and Dimond, that it
was to be a permanent loan: but that there was no agreement

between him and Dimond, as to the time of payment, other than what was expressed in the note itself.

It was then not only in terms, but according to the under-standing of the parties, a note payable on demand : for whatever indulgence Dimond might have hoped for and expected, he stip-ulated for none, but submitted himself to the legal effect of his written contract. Nor is there in the case the least evidence, that the indorser had any notice, that the note was to pass into the hands of the plaintiff, as security for a permanent loan.

It must then, as between the plaintiff and the defendant, upon this statement, be considered as ordinary negotiable paper, pay-able on demand ; and the rights of the parties must be settled ac-cording to the principles applicable to such paper ; unless some facts can be shown, which in law or equity ought to take away from the indorser, the protection afforded him by those principles.

It was admitted on the argument, that the indorsee of a pro-missory note payable on demand, must use due diligence : that is, he must make a demand of payment of the maker, within a *reasonable* time ; and in case of non-payment, give notice as in other cases, to the indorser. *Sice* v. *Cunningham et al.*, 1 *Cowen R.* 397, 411, and cases there cited by court and counsel.

What then are the facts in this case ?    There is no pretence of any demand of payment of the principal debt of Dimond, nor of any notice of non-payment by him, to the indorser, until the 18th or 19th of March, 1839, a period of nearly four years af-ter the note had been given : nor is there the slightest evidence, that the defendant was ever called on for payment, or that he had any knowledge of what had become of the note, from the time he indorsed it, until the 19th March, 1839.    On the other hand it appears by the testimony of O. H. Perry, that Dimond paid the interest due on the note for two years : that in 1837, he, the witness knew, that Dimond was getting embarrassed, and he therefore demanded of him " collateral security ;" and obtained from him an assignment of a bond and mortgage given by one Isaac M. Dimond, on which there was then due the principal sum of two thousand dollars ; which securities remained in the hands of the plaintiff at the time of the trial of this cause in 1840.    Having obtained such security, the plaintiff rested upon it from May, 1837, till the 19th of March, 1839, and then for

the first time, and after (as the witness says) Dimond had gone off and could not be found, she gave the defendant notice of non-payment, and that she looked to him as indorser, for payment. What is there in this state of facts, that can excuse the plaintiff for her negligence, or deprive the defendant of the protection afforded him by that rule of law which requires the holder of such a note, to demand payment of the maker, and give notice to the indorser within a *reasonable* time? I confess I am at a loss to discover anything that can or ought to have such an effect. We are not even embarrassed here by the mixed and sometimes perplexing question, of what is a reasonable time. It was not pretended on the argument, but what if this is to be considered as ordinary commercial paper payable generally, or on demand, that then the demand and notice has not been made and given within a reasonable time: but it was insisted, that this note was made and indorsed under circumstances that entirely dispensed with the necessity of due diligence : that the note was not made for commercial purposes, but as security for a permanent loan, and that the defendant by his indorsement intended and was understood to guaranty and become security for the repayment of the money at all events. It is sufficient to say, that this allegation is not supported by the evidence in the cause. That there was any agreement between Dimond and the plaintiff, that the money should not be called for in one, or two years, or within any other period, is expressly negatived by the plaintiff's own witness : but if there had been any such agreement between Dimond and the plaintiff, it certainly could not affect the rights of the indorser, unless he was a party to that agreement; and even then, it may well be doubted, whether parol evidence of any agreement to extend the time of payment; or in other words, to alter the force of a written contract, would be admissible. *Sice* v. *Cunningham,* 1 *Cowen R.* 397; *Field* v. *Nickerson,* 13 *Mass. R.* 131. But in the absence of any express agreement, or waiver of a demand and notice in a reasonable time, the plaintiff's counsel insists, that as the note was given for a loan, and was payable with interest, the defendant must be considered in the light of a security, and not as a mere indorser of commercial paper. It is true, the note was transferred by Dimond to the plaintiff as security for money borrowed of her; and it is

possible the defendant indorsed it, knowing what was to be its destination. Of this however, there is no evidence. But admitting, that defendant indorsed the note to enable Dimond to borrow money on it, I do not see that that circumstance alters the rights of the defendant: *Nicholson* v. *Gouthit*, 2 *H. Bl. R.* 609 : nor can I conceive why the fact of the note's being payable with *interest*, should take it out of the rule applicable to commercial paper. So far from it, I am rather inclined to adopt the reasoning of Mr. Justice Sutherland, in *Sice* v. *Cunningham*, 1 *Cowen* 397, and conclude, that as it was a note upon which payment might have been *immediately* demanded, the indorser contemplated a short credit, and that that was the condition upon which he agreed to be responsible. That if the object of Dimond was to effect a permanent loan and if a protracted day of payment was in the contemplation of the parties, a corresponding note would have been drawn, and that the borrower would not have put it in the power of Mrs. Perry to call upon him immediately for repayment.

In that case, 1 *Cowen*, 397, the Supreme Court of New York decidedly expressly, that a note for money lent, payable on demand, *with interest*, is within the general rule. *Field* v. *Nicherson*, 13 *Mass. R.* 131, is to the same effect. The notes were given, payable on demand, and *with interest*, for money which had been previously borrowed by the maker of the notes, of the plaintiff, and the defendant indorsed them with a knowledge of that fact; and that the loan was thereupon to be continued for some time. But the court held, that these circumstances did not take the notes out of the general rule; and they sustained the verdict of the jury (who had decided that eight months was not a reasonable time,) adding that there was "no doubt that a much shorter time would have been sufficient to produce the same result." So too in *Losee* v. *Dunkin*, 7 *Johns. R.* the note, as in this case, was payable, on demand, *with interest*, and had been indorsed to the plaintiff only two and a half months, after its date ; yet in a suit by the indorsee, against the maker, the defendant was admitted to prove payment to the indorser, on the ground, that it was a dishonored note, when indorsed to the plaintiff. I cite this case only to show, that the court did not think the circumstance, that the note was payable with *interest*,

took it out of the general rule. So too in *Smith* v. *Becket*, 13 *East*, 187, the defendant indorsed the note, which was payable on demand, for the express purpose of enabling the maker to raise money on it from the plaintiffs; notwithstanding which, it was held, that a demand and notice to the indorser, of non-payment was necessary.

The only case by which the plaintiff's counsel seek to sustain themselves is, that of *Vreeland* v. *Hyde*, in the Superior Court of New York, 2 *Hall's R.* 429. But the facts and circumstances of that case, if they are correctly reported, (and I have some suspicions they are not,) would have led me to a different result. I should have considered the plaintiff as having taken the note, as a dishonored note, or at least, as having received it from a person, who he knew was making an improper use of it.

There is however, one fact in that case, which seems not to have been noticed by the court, but which would have fully justified a judgment for the plaintiff. The firm of *Hyde & Banta*, had become insolvent and made an assignment of all their property to Simeon Hyde, (the indorser,) and two others, with a clause preferring his claim, if he should ever be compelled to pay this note.

The case of *Bond et al.* v. *Farnham*, 5 *Mass. R.* 170; *The Mechanic's Bank of New York* v. *Griswold*, 7 *Wend. R.* 165; *Barton* v. *Baker*, 1 *Serg. and Rawle*, 334; *Corney* v. *Dacosta*, 1 *Esp. R.* 302, and *Brown* v. *Maffey*, 15 *East*, 222, all show that where the indorser takes an assignment of all the estate of the maker, for the purpose of meeting his responsibilities; or has received effects into his hands to satisfy the amount of the indorsement, no demand or notice is necessary. The indorser, in such case, has made the debt his own, and he has no right to complain of the want of notice. Upon this ground, therefore, judgment might properly have been given for the plaintiff, in the case of *Vreeland* v. *Hyde*; and I do not therefore, consider it as furnishing any support to the present action. Besides all this, it is perfectly manifest in this case, that the plaintiff had relinquished all expectation of looking to the defendant; for after having received two years' interest from the maker of the note, he called on him for collateral security, and took an assignment of a bond and mortgage for the very sum due on the note, upon which he

quietly rested, without once calling on the defendant, from May, 1837, until the 19th of March, 1839.   I am therefore of opinion, that the Circuit Court ought to be advised and instructed to give judgment for the defendant, with costs.

*Circuit Court advised to give judgment for defendant.*